IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIKAYLA GAFFNEY, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| XOLO TACOS 2, INC., *Defendant* | : : : | No. 19-711 |

## MEMORANDUM

PRATTER, J.                                                                                                          MARCH 31, 2020

Mikayla Gaffney initiated this action against her employer[1] Xolo Tacos 2, LLC, individually and on behalf of other similarly situated employees, pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* and the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. § 333.100 *et seq.* In her complaint, Ms. Gaffney alleged that Xolo Tacos improperly and willfully failed to pay its servers the minimum wage mandated by the FLSA and PMWA.

Ms. Gaffney did not pursue FLSA conditional certification. Instead, she and Xolo Tacos reached a settlement agreement to resolve her own individual claims. The parties now seek the Court's approval of their proposed settlement agreement. For the following reasons, the Court denies without prejudice the joint petition for judicial approval of the settlement agreement.

### BACKGROUND

**I.    Factual Background and Procedural History**

Xolo Tacos, a restaurant, hired Ms. Gaffney as a busser on or around November 22, 2017. Approximately one week later, Ms. Gaffney became a server at Xolo Tacos. Ms. Gaffney alleges

---

[1] It is unclear from the pleadings and filings whether Ms. Gaffney is currently employed by Xolo Tacos.

1

that she, along with current and former servers of Xolo Tacos, were exclusively compensated by way of tips for all hours worked in any given workweek. Because Xolo Tacos did not pay any non-tip wages, Ms. Gaffney alleges that Xolo Tacos failed to pay her and all similarly situated servers minimum wage as mandated under the FLSA and PMWA.

Ms. Gaffney filed a class action and collective class complaint against Xolo Tacos. Xolo Tacos filed an answer, generally denying most of Ms. Gaffney's allegations and asserting several affirmative defenses. After the parties discussed the merits of the case, including its potential class action implications, Ms. Gaffney did not seek FLSA conditional certification of a collective class. The parties have since reached an agreement to settle Ms. Gaffney's individual claims.

## II. Terms of the Settlement

The parties' proposed settlement agreement provides that Xolo Tacos will pay an aggregate of $7,775.00 to Ms. Gaffney and her counsel. Pursuant to the proposed agreement, Ms. Gaffney will receive $4,653.75 and her attorney $3,121.25 in fees and costs. In exchange, Ms. Gaffney has agreed to the following "General Release and Waiver of Rights and Claims by the Plaintiff" provision:

> 3. [Ms. Gaffney] unconditionally releases and forever discharges [Xolo Tacos], its owners, agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, which against [Xolo Tacos], [her] heirs, executors, administrators, agents, successors, and assigns, ever had, may now have or hereafter can, shall or may have, arising under any federal, state or local, wage-hour, or law laws and/or regulations, or contract

2

from the beginning of time to the date this Agreement is executed by the Parties, including, but not limited to:

> A. all claims under The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; the Pennsylvania Wage Payment and Collection Law ("WCPL") [sic], and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), any amendments to the statutes referred to herein; sales commissions earned or accrued, whether as an employee or independent contractor; any costs, damages, interest, liquidated damages or attorneys' fees related to any such alleged violation; alleged unpaid wages, salary, or overtime compensation; employee classification; exempt classification; "at-will" classification; and any claims relating to procurement of customers, sub-agents, business, finder's s [sic] fees, or any other asserted basis for additional remuneration or other
>
> B. all claims alleging breach of promise, breach of contract or implied contract; fraud; misrepresentation; fraudulent inducement; promissory estoppel; unjust enrichment; quantum meruit; conversion; defamation; or otherwise arising under any common law theory or in tort, contract or quasi-contract, whether in law or equity;
>
> C. all claims for fringe benefits; employee benefits; employee contributions; supplemental benefits; allowances; reimbursement; participation in any benefit plan; administration or application of any benefit plan; and any claims for non-vested benefits arising under ERISA;
>
> D. all claims for payment of income and employment taxes.

Revised Settlement Agreement, Ex. A at ¶ 3 (Doc. No. 16-1). Pursuant to the Court's order, the parties added language that no terms of the settlement agreement "shall bind or operate as a release of any claim or legal position by any person except and limited to [Ms.] Gaffney." *Id.* The parties also agreed to a confidentiality and non-disparagement provision:

> The Parties agree not to disparage any Plaintiff [Ms. Gaffney] or Defendant [Xolo Tacos] involved in this Action in any way or say

3

or do anything that would harm the reputation of that individual and/or corporate entity.

The terms of this Agreement are confidential and they have not been and shall not be disclosed by [Ms. Gaffney] at any time to any person other than [Ms. Gaffney's] lawyer or accountant, a governmental agency, or [Ms. Gaffney's] immediate family without the prior written consent of [Xolo Tacos], except to the extent required by law or the District Court's procedures, or as necessary in any legal proceedings directly related to the provisions and terms of this Agreement, to prepare and file income tax forms, or as required by court order after reasonable notice to [Xolo Tacos].

*Id.* at ¶ 8.

## LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). An employer who violates the FLSA's minimum wage provision, codified at 29 U.S.C. § 206, may be liable to affected employees "in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216.

"To safeguard employee rights made mandatory by the statute, a majority of courts have held that bona fide FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit." *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015). In the absence of guidance from the Third Circuit Court of Appeals, courts in this Circuit have routinely employed the requirements set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982), in reviewing proposed compromises or settlements. *Bettger*, 2015 WL 279754, at *3 (collecting cases). Following *Lynn's Food Stores*, a district court should approve a proposed settlement between the parties if it

4

is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355.

To be considered a resolution of a bona fide dispute, the proposed settlement must reflect a reasonable compromise over factual issues actually in dispute, rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food Stores*, 679 F.2d at 1354); *see Creed v. Benco Dental Supply Co.*, No. 12-1571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (noting that a dispute is "bona fide" when it involves "'factual issues' rather than 'legal issues such as the statute's coverage and applicability'") (quoting *Lignore v. Hosp. of Univ. of Pa.*, No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007)). "In determining whether a compromise is fair and reasonable, courts in this Circuit consider both (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015) (collecting cases).

## DISCUSSION[2]

With this framework in mind, the Court analyzes whether the proposed settlement agreement (1) resolves a bona fide dispute over the applicable FLSA provisions; (2) is fair and reasonable to Ms. Gaffney; and (3) does not frustrate the implementation of the FLSA.

---

[2] Because judicial approval of the settlement of PMWA claims is not required, the parties do not seek approval of the settlement agreement as it pertains to Ms. Gaffney's PMWA claim. *See Weismantly v. Jali*, No. 13-1087, 2015 WL 1866190, at *1 (W.D. Pa. Apr. 23, 2015) (noting that although the parties sought approval of the settlement of the plaintiff's FLSA claims, the parallel state law claims "d[id] not appear to require any sort of Court approval to be lawfully settled").

## I. Whether the Settlement Agreement Resolves a Bona Fide Dispute

First, the Court considers whether the proposed settlement terms reflect the existence of a bona fide dispute between the parties. "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). Here, the parties genuinely dispute whether Ms. Gaffney was paid minimum wage in addition to tip money as required by the FLSA. Ms. Gaffney alleges that Xolo Tacos, compensating Ms. Gaffney only in tips, did not pay her minimum wage for the time she spent working as a server. Xolo Tacos, however, contends that it always properly compensated Ms. Gaffney and, therefore, denies any liability for Ms. Gaffney's claims. Indeed, Xolo Tacos denied Ms. Gaffney's allegations in its answer and asserted several affirmative defenses. *See Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 778 (E.D. Pa. 2016) (demonstrating a bona fide dispute in part by assessing the defendant's general denial of the plaintiff's allegations of wrongdoing and the defendant's assertion of affirmative defenses). As such, the Court is satisfied that the proposed settlement resolves a bona fide dispute between the parties.

## II. Whether the Settlement Agreement is Fair and Reasonable to Ms. Gaffney

Second, the Court considers whether the proposed settlement is fair and reasonable to Ms. Gaffney. A court's analysis of the fairness and reasonableness of a settlement agreement usually depends on the following nine factors enumerated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975): "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, No. 16-2663, 2017 WL 2215264, at *2 (E.D. Pa. May 18, 2017) (citing *Girsh*, 521 F.2d at 157). However, "at least some of the *Girsh* factors appear to be little help, if not irrelevant, in the single-plaintiff context." *Howard*, 197 F. Supp. 3d at 777 n.1. "Thus, even though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair." *Id.* (quoting *Kraus*, 155 F. Supp. 3d at 523 n. 3).

Here, the proposed settlement agreement awards a total amount of $7,775.00 to be divided between Ms. Gaffney and her attorney. Because Ms. Gaffney and her counsel entered into a contingency fee agreement entitling counsel to 35% of the settlement fund plus costs the firm advanced in connection to the lawsuit, Preeya Bansal Aff., Ex. B at ¶ 4 (Doc. No. 16-2), the proposed agreement awards Ms. Gaffney $4,653.75 and her attorney $2,721.25 in fees and $400 for the cost of filing this action.

Ms. Gaffney's counsel believes that the award fairly and adequately compensates Ms. Gaffney within her window of estimated damages and amounts to an award equal to or in excess of the amount she is owed pursuant to the applicable FLSA provisions. Defense counsel also contends that this settlement award "falls within the range of liability [Xolo Tacos] believes [Ms. Gaffney] may be able to obtain." Joint Pet. at ¶ 27 (Doc. No. 13). Furthermore, Ms. Gaffney's counsel states that the benefit derived from the proposed settlement agreement exceeds the risks of litigation, including, among others, inconsistent testimony, jury opinions, and legal

risks. Xolo Tacos insists that it has considered the costs of litigating this matter, including an award of reasonable attorney's fees if Ms. Gaffney were ultimately to prevail at trial.

Without questioning the efficacy of these representations, the Court finds it difficult to meaningfully assess the fairness and reasonableness of the proposed agreement based on these generalized representations alone. The joint petition does not in any way detail how the parties reached the $7,775.00 award. Specifically, the parties have not submitted information regarding Ms. Gaffney's hourly rate or the number of hours, days, or weeks she allegedly worked without receiving what she contended was the proper minimum wage compensation. Without this basic information, the Court cannot assess the range of reasonableness of the settlement fund in light of the best possible recovery or possible recovery in light of the attendant risks of litigation.

Concerning the attorney's fees and cost awards, the FLSA mandates that a district court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As noted, the contingency fee agreement entered into by Ms. Gaffney and her counsel entitles counsel to 35% of the settlement, plus costs. Preeya Bansal Aff., Ex. B at ¶ 4 (Doc. No. 16-2). Indeed, courts in this District have approved higher contingency rates in similar single-plaintiff FLSA cases. *See, e.g., Parris v. Creative Waste Solutions, LLC*, No. 17-3093, at Doc. No. 20 (E.D. Pa. Mar. 18, 2018) (approving a 40% contingency fee for single-plaintiff FLSA case); *Parks v. Creative Waste Solutions, LLC*, No. 17-2559, at Doc. No. 23 (E.D. Pa. Mar. 14, 2018) (approving a 40% contingency fee for single-plaintiff FLSA case); *Messina v. Oxford Valley Cardiology Assoc. P.C.*, No. 16-1008, at Doc. No. 24 (E.D. Pa. Sept. 29, 2016) (approving a 40% contingency fee for 5 single-plaintiff cases); *Adams v. Bayview Asset Mgmt., LLC*, No. 13-5967, at Doc. No. 11 (E.D. Pa. May 27, 2014) (approving a 40% contingency fee for 8 single-plaintiff cases). A 35% recovery

is also consistent with the attorney's fees awards in FLSA common fund cases in this Circuit. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20 to 45%.") (collecting cases). Therefore, provided that Ms. Gaffney's counsel provides the engagement letter requested by the Court,[3] the Court is not averse to approving a contingency rate of 35% as part of a fair and reasonable award.

In sum, because the Court lacks the requisite information necessary to adequately assess the fairness and reasonableness of the proposed settlement agreement, the Court cannot approve the agreement at this time. The parties should include the missing information in a revised joint petition.

### III. Frustration of the FLSA

For good measure, the Court considers whether the settlement agreement as proposed frustrates the implementation of the FLSA in the workplace. As discussed below, the Court finds issue with the proposed agreement's release and confidentiality provisions.

#### A. Release Provision

A reviewing district court is to guard against expansive, all-encompassing waiver and release provisions. *See, e.g., Kraus*, 155 F. Supp. 3d at 532-33; *Bettger*, 2015 WL 279754, at **8-10. "[I]n order to ensure equal bargaining power between the parties[,]" a reviewing court may require parties to limit the scope of these provisions to "'claims related to the specific litigation[.]'" *Bettger*, 2015 WL 279754, at *8 (quoting *Singleton v. First Student Mgmt., LLC.*, No. 13-144,

---

[3] The Court previously instructed the parties to submit the engagement letter between Ms. Gaffney and her attorney. (Doc. No. 15). Instead, Ms. Gaffney's attorney stated in an affidavit that Ms. Gaffney agreed to the 35% contingency fee plus costs. Preeya Bansal Aff., Ex. B at ¶ 4 (Doc. No. 16-2). The Court again directs the parties to submit the contemporaneous-with-retention engagement letter to the Court in support of the renewed joint petition.

2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014)); *see also Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011) ("[Pervasive release] provisions confer a partially offsetting benefit on the employer that is ancillary to the bona-fide dispute over FLSA coverage and wages due.") (internal quotation marks omitted); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.").

For instance, in *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015), the proposed waiver and release provision precluded the plaintiff "from raising any and all claims" she might have brought against the defendant "arising prior to the execution date of the agreement and required her to dismiss any charges of discrimination, harassment, or retaliation currently pending with any government agency." *Id.* at *9. The court noted that if the plaintiff were to have discovered "any potential cause of action arising from events that predate the agreement's execution, she [would] be barred from litigating against [the defendant]." *Id.* The court concluded "that such a broad waiver impermissibly frustrate[d] the implementation of an otherwise fair and reasonable settlement." *Id.*

Relying on *Bettger*, this Court in *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516 (E.D. Pa. 2016), rejected a similar waiver and release provision that precluded the plaintiff from raising "any and all" claims she might have brought against the defendant, including but not limited to, back pay, discrimination, retaliation, harassment, "any and all tort [c]laims or contract [c]laims," as well as violations of "any federal, state, or local fair employment practices or civil rights laws or ordinances." *Kraus*, 155 F. Supp. 3d at 532-33.

Here, too, the Court must reject the overly broad "General Release and Waiver of Rights and Claims by the Plaintiff" provision. The provision's language here purports to prohibit Ms. Gaffney from bringing "any and all claims . . . including, but not limited to" claims arising under the FLSA, the WPCL, and PMWA; tort, contract, or quasi-contract claims; and claims for fringe and employee benefits "from the beginning of time" to the date the settlement agreement is executed." Revised Settlement Agreement, Ex. A at ¶ 3 (Doc. No. 16-1). As in *Bettger* and *Kraus*, if Ms. Gaffney were "to discover any potential cause of action arising from events that predate" the execution of the settlement agreement, "she w[ould] be barred from litigating against [Xolo Tacos] under the Agreement." *Kraus*, 155 F. Supp. 3d at 533. Surely such a release flies in the face of the exacting scrutiny demanded by the FLSA and, hence, ought not be approved by the Court.

Although the parties do not address it in their joint petition, the Third Circuit Court of Appeals also instructs that all waivers of employment discrimination claims must be made "knowingly and willfully." *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 730-31 (3d Cir. 2005). The reviewing court is to assess whether the waiver is knowing and voluntary pursuant to the totality of the circumstances test, which considers, among other factors,[4] "whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law." *Id.* (quoting *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988)). Because the Court anticipates the possibility that, at the

---

[4] The complete list of factors is as follows: "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law." *Cuchara*, 129 F. App'x at 731 (quoting *Cirillo*, 862 F.2d at 451).

very least, this factor can weigh against finding the waiver valid, the Court encourages the parties to better address in its renewed joint petition and revised settlement agreement whether a revised waiver was made "knowingly and voluntarily" by Ms. Gaffney. Certainly, at any final hearing, the Court would make separate inquiry of Ms. Gaffney directly.

### B. Confidentiality Provision

There exists a "broad consensus" that an FLSA settlement agreement ought *not* be kept confidential. *See Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 300583, at *3 (D.N.J. Feb. 1, 2012) (collecting cases). This is because silencing employees who have vindicated their rights pursuant to the FLSA "thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1245 (M.D. Fla. 2010). Courts have approved only "limited" or "narrowly drawn" confidentiality clauses that do not prohibit plaintiffs from discussing settlement agreements with, at the very least, the defendants' employees. *Mabry*, 2015 WL 5025810, at *3 (disapproving a confidentiality clause that allowed the plaintiff to disclose the terms of the agreement with only his "spouse, attorney, and/or accountant"); *cf. McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving a confidentiality clause which prohibited the plaintiff from speaking with the media but otherwise permitted the plaintiff to share the terms of the settlement agreement with "friends, family, employees, and individuals not affiliated with the media"); *Chickie & Pete's, Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) (approving a confidentiality clause which did not "prohibit Plaintiffs from discussing this matter with anyone, but only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media").

Here, the confidentiality clause expressly prohibits Ms. Gaffney from disclosing the terms of the settlement agreement to "any person other than [Ms. Gaffney's] lawyer or accountant, a governmental agency, or [Ms. Gaffney's] immediate family" without Xolo Tacos' prior written consent, barring a few exceptions. Revised Settlement Agreement, Ex. A at ¶ 8 (Doc. No. 16-1). The Court, however, cannot approve such a wide-sweeping confidentiality clause that prohibits Ms. Gaffney from sharing information about the circumstances of her case with her friends or co-workers. Rather, "[t]he 'public-private character' of employee rights under the FLSA means that the public, including current, former, or potential employees of [Xolo Tacos], has an interest in assuring that employee wages are fair." *Mabry*, 2015 WL 5025810, at *3. Accordingly, the Court rejects the confidentiality clause as drafted.[5]

## CONCLUSION

Applying the rigorous scrutiny mandated by the FLSA, the Court, as is must, denies the joint petition without prejudice. In order to obtain the Court's approval, the parties should provide the information necessary for the Court to meaningfully assess the reasonableness and fairness of the award. Moreover, the Court will not approve the release and confidentiality provisions as drafted. The parties may submit a revised settlement agreement, a renewed joint petition, and any supporting evidentiary documentation for judicial review. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5] In contrast, the Court notes that the settlement agreement's non-disparagement clause does not frustrate the purposes of the FLSA. *See, e.g., Mabry*, 2015 WL 5025810, at *3; *Lyons v. Gerhard's Inc.*, 2015 WL 4378514, at *5 (E.D. Pa. July 16, 2015); *Chickie's & Pete's*, 2014 WL 911718, at *3.

13